## Zachariah Chandler and Another vs. Martin A. Nash and Another.

In special proceedings, not according to the course of the common law, jurisdiction must affirmatively appear on the record.

*It seems* that where property which has been assigned is taken on attachment as the property of the assignor, such assignor, having no claim to have the property restored to him, can not take proceedings (under § 4773 of Compiled Laws) for the dissolution of the attachment.

CHANDLER vs. NASH.

The Constitution of Michigan having vested the whole judicial power of the State in certain specified courts and officers, and provided for the election of all judicial officers by the people, the Legislature can not confer any portion of such judicial power upon any officer not elective, and not so specified. And, there, fore, the "Act to provide for the Discharge of certain Duties required to be performed by Circuit Court Commissioners," approved February 14th, 1853, in so far as it undertakes to confer judicial powers upon Notaries Public, in certain cases, is unconstitutional and void.

*Heard July 13th.   Decided July 15th.*

Certiorari to William B. Wells, a Notary Public and Attorney of the Supreme Court, acting in the place of circuit court commissioner for the county of Ionia.

The proceeding before the notary was an application, on the part of defendants in error, for the dissolution of an attachment issued from the Ionia Circuit Court against their property, at the suit of plaintiffs in error; and was based upon the following petition:

"To William B. Wells, Notary Public, residing in the county of Ionia: The petition of Martin A. Nash and Hiram T. Barstow, of the town of Ionia, in the county of Ionia, State of Michigan, respectfully showeth:—That your petitioners have received notice that a writ of attachment has been issued from the Circuit Court of the county of Ionia, on the application of Zachariah Chandler and Edward Orr, of the city of Detroit, State of Michigan, directed to the sheriff of the county of Ionia, commanding him to attach and safely keep the goods and chattels, moneys and effects, lands and tenements, of your petitioners, as fraudulent debtors (except such articles as are exempt by law from execution), which writ of attachment has been served upon your petitioners. Your petitioners hereby further state and allege, that they have not assigned their property with the intent to defraud their creditors, within the meaning of section second, of title twenty-four, of chapter one hundred and fourteen, of the Revised Statutes of the State of Michigan. Your petitioners, therefore, pray that Zachariah Chandler and Edward Orr, plaintiffs in attachment, may be cited to appear before you, the said notary public, on a day, and at a time and

place, in said citation to be mentioned, to show cause why the said attachment should not be dissolved, and the property attached by virtue of it restored to the defendants in attachment.   MARTIN A. NASH.   H. T. BARSTOW."

This petition was duly verified, and was accompanied by affidavit showing that the circuit court commissioner for the county was disqualified from acting in the premises, he being attorney for plaintiffs in the attachment suit.

‑ On the 22d day of June, 1857, the notary public issued to plaintiffs in error a citation, based on such petition, to appear, and "show cause why such attachment should not be dissolved, and the property restored to the defendants in the attachment."

The notary public returns to the certiorari in this case, that, in obedience to such citation, the parties respectively appeared before him by counsel, and proceeded to a hearing of the case, on the 8th day of, July, 1857. That, on the part of plaintiffs in error, it was shown that, previous to the issuing of such attachment, the defendant Nash was one of the firm of Barstow & Nash, and that he (the said Nash) had assigned to the other member of said firm all his rights and interest in the property of said firm, Barstow at the same time covenanting to pay all the debts of said firm, and save Nash harmless therefrom; that afterwards, on the 4th day of April, 1857, before the issuing of such attachment, said Barstow made an assignment for the benefit of the creditors of the said firm, of all the goods and chattels, evidences of debt, and property of every name and nature, that had theretofore belonged to the said firm of Barstow & Nash—but at the date of said assignment owned by the said Barstow—to one Larmon B. Townsend; and that afterwards the said writ of attachment was issued against the goods and chattels, lands and tenements, of the said Nash & Barstow. ‑ And that it further appeared, that, previous to the said assignment by said Barstow to said Townsend, and previous to the said sale and conveyance from the said Nash to the

said Barstow, the said Nash had sold and conveyed certain real estate to one Luro B. Nash; but that there was no evidence presented in the said showing by the said Chandler and Orr, that the said Barstow and Nash had at any time sold, assigned, conveyed, or disposed of any of their joint partnership property, with intent to defraud the creditors of Barstow & Nash.

And from the testimony submitted to said notary, he decided "That the assigning or disposing in any manner by an individual member of a firm of his individual private property not belonging to the firm of which he was a member, would not authorize the issuing of an attachment against the property of the firm, or in the name of the firm, or against the firm of which he happened to be a member." And that "It appearing that there had been no act on the part of the said firm of Barstow & Nash, disposing of property belonging to said firm, with intent to defraud the creditors thereof, on motion of A. F. Bell, attorney for said defendants, it was ordered that the said attachment issued in said cause be dissolved, and that the property attached be restored to the said defendants, Hiram T. Barstow and Martin A. Nash."

*Jerome & Swift,* and *C. I. Walker,* for plaintiffs in error:

1. The proceeding is unquestionably *special* in its character, not according to the course of the common law; and the jurisdiction of the officer must affirmatively and distinctly appear from the record.— *Wight vs. Warner,* 1 *Doug. Mich.* 384; *Clark vs. Holmes,* 1 *Doug. Mich.* 390; *Trader vs. Mc-Kee,* 1 *Scam.* 558; *Straughan vs. Inge,* 5 *Ind.* 157.

Here it does not appear, from the petition or record, that the *property of the applicants* had been attached, but the contrary appears; and it is only a defendant *whose property has been attached* that can apply under the statute.— *Comp. L.* § 4773.

The fact that the record shows no objection taken to

jurisdiction does not relieve the difficulty. Consent can not confer jurisdiction as to subject-matter. — *State vs. Caroline*, 20 *Ala.* 19; *State vs. Bonney*, 34 *Me.* 223; *Hurd vs. Tombes*, 7 *How. Miss.* 229; *Leigh vs. Mason*, 1 *Scam.* 249.

2. The statute attempting to confer jurisdiction in such cases upon notaries public is unconstitutional. The judicial power given by the Constitution is exclusive in its character. The Legislature can not organize new courts not therein provided for, or confer judicial power upon officers not therein named. The judicial power is vested in the Supreme Court, in probate and municipal courts, and in justices of the peace. — *Const. Art. VI.* § 1.

The Legislature is, also, authorized to provide, by law, for the *election* of one or more persons in each organized county, with judicial powers not exceeding those of a judge of the circuit court at chambers. — *Ibid.* § 16. Courts of conciliation may also be established. — *Ibid.* § 23.

The election of circuit court commissioners is authorized by section 16, but the Legislature can not confer judicial powers on notaries public. They are not *elected*, and the policy of the Constitution, as well as its very letter, requires all judicial officers to be elected, unless it be judges of courts of conciliation. — See *The State vs. Judge of 6th District*, 9 *La. An.* 62.

Where the Constitution has distributed the judicial power as ours has, the Legislature can not confer it upon officers not named or provided for in the Constitution. — *State vs. City of Rockford*, 14 *Ill.* 420; *Gibson vs. Emerson*, 2 *Eng.* 173; *Lewis vs. Webb*, 3 *Greenl.* 330; 2 *Story on Const.* § 1590, 1592; *Martin vs. Hunter's Lessee*, 1 *Wheat.* 329.

*Bell & Soule*, for defendants in error:

When a Court declares a law unconstitutional, it, in effect, declares that the sovereign power of the people has so far been abdicated by themselves. — *People vs. Draper*, 15 *N. Y.* 549. Plenary powers in the Legislature, for all the purposes

of civil government, is the rule, and prohibition to exercise a particular power is an exception.    In inquiring, therefore, whether a particular statute is constitutional, it is for those who question its validity to show that it is forbidden.    Courts will not declare a law unconstitutional when it is made so by inference or presumption only, or when the question rests in doubt.—*Fletcher vs. Peck*, 6 *Cranch*, 87 ; *Exparte McCollum*, 1 *Cow*. 564.

The Legislature is not forbidden by §§ 1 and 16 of Art. VI. of the Constitution to vest in notaries public the power to perform the duties of circuit court commissioner when that officer is disqualified to act.    Those sections vest the judicial power of the State in the *courts* therein mentioned, and in justices of the peace; but not in the *judges or officers* of those courts.    The 16th section provides for the election of circuit court commissioners, to be vested with judicial powers not exceeding those of a circuit judge at chambers; yet the Legislature have conferred upon that officer judicial powers not possessed by a circuit judge at chambers — as in cases of forcible entry and detainer, and summary proceedings against tenants, &c., and in issuing warrants for the arrest and examination of offenders in certain cases.    When the circuit judges act in these cases, they act, not as judges, but as commissioners.— *Cunningham vs. Bucklin*, 8 *Cow*. 184.    And if the Legislature can confer such powers upon circuit judges and commissioners, they may confer them upon notaries also. But the Act in question does not give notaries equal or concurrent power with the commissioner or judge, nor, indeed, any general power whatever, peculiar to the notary, or in common with any other officer or court, but simply gives the right to act as commissioner in peculiar instances; and in so doing does not tread on any ground covered by the Constitution.— *Sill vs. Village of Corning*, 15 *N. Y.* 300.    The Constitution expressly creates a Probate Court, and provides for the election of judges of probate to hold it; but the Legislature have provided that a commissioner may discharge

the duties of judge of probate when that officer is interested. In so doing, the Legislature do not infringe upon any provision of the Constitution. The common law prohibits judicial officers from acting when interested (*Oakley vs. Aspinwall*, 3 *Comst.* 549), and, the Constitution nowhere making provision for such a contingency, the matter is left to be regulated by legislative action.

CHRISTIANCY J.:

Several questions are raised by the return to the certiorari in this cause, of which, however, we shall notice but two.

*First*, Conceding that the notary had all the power which could be exercised by a circuit court commissioner, the question arises, Whether the case presented by the application (petition) and the evidence, was such as to come within the jurisdiction of the commissioner.

The statute authorizing this special proceeding (*Comp. L. p.* 1275) provides that "It shall be lawful for any defendant, whose property may be attached by virtue of such writ, to apply to the judge of the circuit court, or the circuit court commissioner of the county, for a dissolution of the attachment, which application shall be in writing, and shall contain the *reasons* for such application." By section two, the judge or commissioner, on presentation of such application, is required to issue a citation to the plaintiff to show cause "why the said attachment should not be dissolved and the property restored to the defendant in attachment." By section three, the judge or commissioner is to hear the proofs and allegations of the parties, and if he shall be satisfied that such plaintiff has not a good legal cause for suing out such writ, "he may order such attachment to be dissolved, and the property attached to be restored to the defendant"; and he may require the defendant, as a condition of the dissolution, to enter his appearance in the cause. Section four provides that he may issue subpœnas, and, if necessary, attachments, to compel the attendance of witnesses to testify in such cases

and may order the costs of the proceedings by citation to be paid by the party against whom the decisions shall be made, and may issue execution therefor.

The statute conferring the like powers upon notaries, in certain cases, will be noticed hereafter.

The proceedings authorized by the statute above cited, is a special proceeding not according to the course of the common law; and, to maintain the jurisdiction of the officer, such jurisdiction must affirmatively appear upon the record.— *Wight vs. Warner*, 1 *Doug. Mich.* 384; *Clark vs. Holmes, Ibid.* 390.

It may well be doubted whether the petition presented in this case for a dissolution of the attachment, discloses a case coming within the provisions of the Act, as it does not state that the property of the defendants had been attached, and, consequently, if its truth be admitted, does not show a proper case for an order dissolving the attachment, and "*restoring* the *property* to the *defendants*." This, we are inclined to think, should have appeared on the face of the petition, to confer jurisdiction. But if it be contended that this want of jurisdiction might be cured by the evidence, though not stated in the petition (which we think is not the the law), yet, in this case, a reference to the evidence only tends to render the want of jurisdiction more apparent and conclusive, proving clearly that the defendants in the attachment had no pretence of claim to have the property restored to them, as it shows the property had been assigned to another for the benefit of creditors. This assignment, whether void or not as against creditors, was, so far as the evidence tends to prove, valid as against the defendants. The plaintiffs in the attachment, being creditors, might dispute its validity, but the defendants could not.

The case, therefore, as presented, not only omits to show any right of the defendants in the property attached, but shows affirmatively that no such right existed, and furnishes a very satisfactory reason why the defendants did not set

forth such right in their sworn petition. We are inclined, therefore, to the opinion that the case was not within the jurisdiction of the notary, even if he possessed all the power of a commissioner in such case.

But, *Second*, admitting that the petition presented a proper case (which we think it did not) for the jurisdiction of a circuit court commissioner, could the notary exercise such jurisdiction, the commissioner being disqualified to act?

The Act of February 14th, 1853 (*Comp. L. pp.* 1112 *and* 1113), in express terms, gives to a notary public all the powers, in such cases, which are conferred upon the circuit court commissioner by the Act first above cited, in all cases where such commissioner is a party, attorney, solicitor, or counsel, or otherwise interested. And, in this case, the only circuit court commissioner was counsel in the cause.

This presents the naked question, Whether the Legislature possessed the constitutional power to confer such jurisdiction upon the notary?

The proceeding authorized by the statute first cited, for dissolving attachments, is as clearly a judicial proceeding as the trial of a cause in any court of the [State; and the power "to hear and determine" such application under the statute, is as clearly a judicial power as that exercised by a justice of the peace or a judge upon the bench. It is not like a mere reference to take proof or compute amounts to be reported to a court of record for their judicial action, but it is "*to hear and determine*" questions both of law and fact.

Sec. 1, Art. VI. of the Constitution declares: "The judicial power is vested in one Supreme Court, in Circuit Courts, in Probate Courts, and in justices of the peace. Municipal courts of civil and criminal jurisdiction may be established by the Legislature, in cities." This, beyond all controversy vests the *whole* judicial power of the State in the courts and officers named in this section, unless there be some further provision in the same Constitution, conferring upon some other

5 Mich. — 2B.

court or officer a part of such judicial power, or authorizing the Legislature to confer it; and in the latter case, it can only be possessed or conferred by such further provision expressly, or by necessary implication, which would have the effect to take the case out of the general provision above quoted. This must be so upon principle, or the Constitution itself must be subject to legislative repeal. It is also well supported by authority.—See 2 *Story on Const.* §§ 1590 *to* 1592; *State vs. City of Rockford,* 14 *Ill.* 420; *Gibson vs. Emerson,* 2 *Eng.* 173.

The Constitution of New York contains no such provision vesting the judicial power in specified courts or officers, though it provides that certain courts shall be established, and certain judicial officers elected. And in the case of *Sill vs. Village of Corning,* 15 *N. Y.* 300, the majority of the Court of Appeals assign the absence of such provision as the ground for their opinion that the Legislature had the power to provide for a police justice in the village of Corning.

Our Constitution, it is true, has authorized the Legislature to confer certain judicial powers upon certain courts and certain officers *not named in the general provision of section one above cited.* Thus, the Legislature are authorized "to provide for the election of one or more persons in each organized county, who may be vested with judicial power not exceeding those of a judge of the circuit court at chambers" (*Art. VI.* § 16); and by section 23 of the same article, the Legislature is authorized to establish courts of conciliation. These are express exceptions in the Constitution itself to the general provision of the first section of the article. And, but for these exceptions, no such judicial power could be exercised by, or conferred upon, such commissioners or courts of conciliation. If any other exceptions had been intended, they would have been expressed. There is no provision of the Constitution authorizing a notary public to exercise any judicial power, nor the Legislature to confer such power.

Again: The Constitution has prescribed the mode of se-

lecting all judicial officers for which it has provided, and the manner in which their offices shall be conferred.   They are to be elected by the people, not appointed by the Governor. Notaries are appointed, and not elected; they owe their existence to the statute, and not to the Constitution, and their number is not limited by the Constitution.

The case of the *State vs. Judge of the 6th District*, 9 *La. An.* 62, is an authority directly in point, that where the Constitution has provided for the election of judicial officers' any other mode of conferring the office is void.   And, upon principle, we can see no escape from a like conclusion in the present case.

Adhering, therefore, fully to the principles and rules of construction upon questions of constitutional power laid down in the case of *Sears vs. Cottrell*, decided at the present term, we are compelled to treat the Act of February 11th, 1853, conferring upon notaries the jurisdiction in question (under the statute for the dissolution of attachments above quoted) as a plain and manifest violation of the first section of Article IV. of the Constitution.   But this opinion is not intended to apply to any merely ministerial powers or duties of such notaries, upon matters which may be referred to them by courts of record, and which are to be reported to such courts for judicial action.

The decision of the notary, and all his proceedings in this case, must therefore be set aside as void.

MARTIN Ch. J. and CAMPBELL J. concurred.


MANNING J.:

I think the proceedings before the notary, dissolving the attachment, are void for want of jurisdiction.

It does not appear in the petition any property of defendants was taken on the attachment.   It might, perhaps, be inferred from the prayer of the petitioner; but that is not enough.   It being a jurisdictional fact, without which the

notary could not entertain the proceeding, it should be posi-
tively stated, and not be left to inference.  As the decision
of this point is a final disposition of the case, I give no.
opinion on the constitutional question.  I am opposed' to
deciding such questions, unless necessary to dispose of the
cause, and then only after much reflection and consideration.

*Proceedings set aside as void.*