THE GENESEE COUNTY SAVINGS BANK v. THE MICHIGAN BARGE COMPANY, THOMAS W. FERRY AND EDWARD P. FERRY.

*Dissolution of attachments—Representations as to solvency—Rating by commercial agency—Corporate liability—Practice.*

1. Proceedings to dissolve an attachment are special and not according to the course of the common law; they are interlocutory and do not affect the merits of the main action.

2. An application for dissolution of an attachment is in the nature of a motion and can be disposed of at chambers. But there must be a hearing and a trial of the questions of fact involved before a judge or circuit court commissioner, and he is to adjudicate questions of both law and fact and may apply the rules that govern the trial of such issues.

3. When the facts set up in the affidavit for an attachment are denied upon a motion to dissolve it, the plaintiff in attachment has the burden of protecting his lien by proofs outside of the affidavit.

4. The Supreme Court cannot review the decision of a lower tribunal upon the testimony submitted on an application to dissolve an attachment, unless there is entire absence of proof on some material point. But it will review its decision upon questions of law, if properly presented, and upon the exclusion of testimony.

5. A corporation was *held* bound by representations as to its solvency, made for the purpose of floating its paper by a member of a firm that was both payee and indorser and owned nearly all the stock and controlled the corporate operations.

6. Representations made by a person in business to a commercial agency are presumed to have been made for the purpose of obtaining credit, and if others, in giving it, rely on them as coming from him, they are admissible in evidence where such credit is in question.

7. A copy of written representations may be put in evidence where the original has been returned to the person making them, and he has failed to produce it on being notified to do so.

8. The liability of a corporation for the acts of one who, with its assent, has controlled and sold its paper for his own benefit, is no less than that of an individual would be.

9. On an application to dissolve an attachment granted on the ground that defendants had disposed of their property with intent to defraud creditors, it was proper to question a witness who testified that he held a mortgage on some of defendants' property, as to what the particular property was and whether he had ever paid defendants anything for the mortgage.

Certiorari to circuit judge (Arnold, J.) Oct. 30.—Dec. 20.

Motion to dissolve attachment. Dissolution allowed by the circuit judge. Order set aside.

*Long & Gold* and *Geer & Williams* for plaintiff appellant.

*George C. Stewart* and *Blair, Kingsley & Kleinhans* for defendants.

SHERWOOD, J. On the 3d day of February, 1883, the plaintiff, by George A. Farr, its attorney, sued out of the circuit court for the county of Ottawa, a writ of attachment against the property of defendants. The attachment was founded upon an affidavit of the attorney for plaintiff, stating in substance, among other things, that he had good reason to believe, and did believe, that the said defendants were about to sell, assign and dispose of their property with intent to defraud their creditors, and that they had sold, assigned, disposed of and concealed their property with the like intent, and that the said defendants fraudulently contracted the debt respecting which the suit was brought. The claim upon which the suit was commenced was a promissory note made by the Michigan Barge Company for the sum of $5000, due February 23, 1883, and indorsed by Ferry & Bro., that being the firm name of the other two defendants. The defendant, The Michigan Barge Com-

pany, as appears from the record, was composed of defendants Thomas W. Ferry and Edward P. Ferry, and John Furlong, Henry G. Bigelow, Andrew Thompson and Dwight Cutler. The stock of the company consisted of $200,000, in shares of $25 each, and the defendants Ferry owned all of it except $675, which was divided among the other stockholders,—Furlong having $600, and the other three $25 each. The property of the Barge Company consisted of thirteen barges and several other boats, and an interest in others. On the day the attachment issued, the sheriff of Ottawa county levied the same upon eight vessels of various kinds belonging to the defendant, the Barge Company.

On the 5th of May, 1883, the Barge Company filed its petition in the circuit court in said county of Ottawa, and moved thereon for a dissolution of the attachment. A hearing was had upon the petition before the circuit judge, who, on the 26th day of June, 1883, entered an order dissolving the attachment, and restoring the property attached to the defendant. These proceedings are now before us for review on certiorari.

The proceedings are taken under Comp. L., ch. 201 [How. St. ch. 275.] They are judicial, and not according to the course of the common law. *Chandler v. Nash* 5 Mich. 416. The statute requires the circuit judge or circuit court commissioner to hear the proofs and allegations of the parties, and if a good and legal cause for suing out the writ is not satisfactorily made to appear to the court upon such hearing, it is his duty to dissolve the attachment and order the property restored to the defendant. The affidavit of the plaintiff, his agent or attorney, is prima facie sufficient cause for issuing the writ; but upon the facts being denied in the petition for a dissolution, the burden is cast upon the plaintiff to make good the cause he alleges by other competent proof in addition to that contained in his affidavit for the writ. He must maintain the affirmative of the issue thus made up in order to sustain his lien created by a levy under his writ. *Macumber v. Beam* 22 Mich. 395; *Brown v. Blanchard* 39 Mich. 790; *Powers v. O'Brien* 44 Mich.

317. The writ issued upon his information and belief that the causes alleged existed. He is called upon by the petition for dissolution to sustain by proofs his charges. *Hyde v. Nelson* 11 Mich. 354. So far as the original suit is concerned, the application to dissolve is entirely an interlocutory proceeding and does not touch or affect the merits thereof. *Edgarton v. Hinchman* 7 Mich. 352; *Gray v. York* 44 Mich. 415. It is in the nature of a motion and may be disposed of at chambers. *Gray v. York* supra. A hearing, however, is required, and a trial of a question of fact must be had; and there is no reason why the rules governing the trial of such issues should not be applied by the court upon the hearing. Questions both of law and fact are to be adjudicated by him. *Chandler v. Nash* supra. In this case sufficient proof of either of the three causes alleged in the affidavit for the writ to satisfy the circuit judge, would secure a continuation of the lien obtained.

We cannot review the decision of the circuit judge on the testimony unless there is an entire absence of proof on some material point. *Brown v. Blanchard* supra; *Cicotte v. Morse* 8 Mich. 424; *Berry v. Lowe* 10 Mich. 9; *Hyde v. Nelson* 11 Mich. 353; *Linn v. Roberts* 15 Mich. 443; *State Bank of Fenton v. Whittle* 41 Mich. 365; *Schall v. Bly* 43 Mich. 401. Questions of law arising in the case, when properly presented, are open to review in this Court. *Hyde v. Nelson* supra; *McGraw v. Schwab* 23 Mich. 18; *Johnson v. De Witt* 36 Mich. 95.

Keeping these rules in mind, we now proceed to the examination of the questions raised upon the record and the rulings of the circuit judge in the cause.

On the 12th day of June, 1883, the hearing on the application to dissolve was had before the circuit judge. On the 19th day of May previous, one Joseph O'Brien replevied four of the boats from the sheriff, three of which were being proceeded against at the time in the United States District Court for the Western District of Michigan in admiralty by other parties.

The plaintiff produced testimony (which was undisputed)

from the annual reports of the Michigan Barge Company, made pursuant to law (Comp. L. § 2688), showing that in 1882 the amount of its capital stock actually paid in was $200,000 ; that nothing remained unpaid, and it owed nothing ; and that in 1883 it owed but $2601.51.    T. W. Ferry was its president and Andrew Thompson was its treasurer, and at some time, through one or both of these officers, the company procured a rating at Bradstreet's Commercial Agency as owning property worth $200,000, while the plaintiff's testimony strongly tends to show that the property was not worth more than $100,000, several of the witnesses putting it below $70,000.    It further appears from the record that the plaintiff obtained the note in suit from the firm of Joseph W. Orvis & Co., in New York city, in December, 1882, and that during the three months previous said firm placed upon the market and sold paper made by different parties and indorsed by Ferry Bros. to the amount of $70,000 ; that the indorsements were made by Thomas W. Ferry ; and that $25,000 of said paper was given by the Michigan Barge Company, $20,000 becoming due December 20, 1882, and one note of $5000 was due the 23d of January previous.    After this paper had been presented to Orvis & Co., T. W. Ferry assured them that it was perfectly good, "as good as could be made," and referred Orvis & Co. to the rating of the Barge Company and of Ferry Bros. (the latter being represented as worth $250,000 to $500,000) in the commercial agencies, and gave them to understand that his firm and the Barge Company were entitled to these several ratings, and referred the purchasers to these ratings to show the financial condition of the parties whose paper was offered for sale ; and that Orvis & Co., relying upon their statements, purchased the paper and in a few days thereafter sold the note sued on to the plaintiff upon the representations of T. W. Ferry communicated to him by Orvis & Co.    It further appears that when the moneys were received upon the paper disposed of by Orvis, it was ultimately passed to the credit of T. W. Ferry with Gilman, Son & Co., in New York.    At the time of the sale of the

note in suit to Orvis & Co. and its transfer by them to the plaintiff, the testimony shows, and it is undisputed, that the indebtedness of the Barge Company, which was also secured by Ferry Bros.' indorsements, was between $50,000 and $60,000, of $35,000 of which E. P. Ferry admits he had knowledge.

From these facts the plaintiff asked the circuit judge to find that the indebtedness of the defendants in suit was fraudulently contracted. The court passed upon this question in the negative, and we cannot disturb that finding, provided he heard all the evidence offered upon that point, however much we might feel inclined to disagree with such finding.

T. W. Ferry at this time was president of the Barge Company, and his firm owned all but $675 of the $200,000 stock. He aided in the sale of the Barge Company's notes, to the knowledge of its officers and managers. Ferry & Bro. not only controlled its operations, but were really the Barge Company; and we fail to see any good reason why the Barge Company should not be bound by T. W. Ferry's representations so far as they had any bearing upon the sales and transfers of the note in suit.

We think the circuit judge erred in rejecting the report made by T. W. Ferry to Bradstreet's agency, and upon which the plaintiff claims to have relied and acted in this case. The business of these agencies is well known to the commercial community. Indeed it is said by Justice Rapallo, in *Eaton, Cole & Burnham Co. v. Avery* 83 N. Y. 31, that "the business and office of these agencies are so well-known, and have been so often the subject of discussion in adjudicated cases, that the courts can take judicial notice of them. Their business is to collect information as to the circumstances, standing, and pecuniary ability of merchants and dealers throughout the country, and keep accounts thereof, so that the subscribers to the agency when applied to by a customer to sell goods to him on credit, may by resorting to the agency or to the lists which it publishes, ascertain the standing and responsibility of the customer to

whom it is proposed to extend credit. A person furnishing information to such an agency in relation to his own circumstances, means and pecuniary responsibility, can have no other motive in so doing than to enable the agency to communicate such information to persons who may be interested in obtaining it, for their guidance in giving credit to the party ; and if a merchant furnishes to such an agency a wilfully false statement of his circumstances or pecuniary ability, with intent to obtain a standing and credit to which he knows that he is not justly entitled, and thus to defraud whoever may resort to the agency, and in reliance upon the false information there lodged, extend a credit to him, there is no reason why his liability to any party defrauded by those means should not be the same as if he had made the false representation directly to the party injured." In these views of the learned judge we entirely concur. They are supported by *Commonwealth v. Call* 21 Pick. 515 and *Commonwealth v. Harley* 7 Met. 462. We think a person furnishing information to a commercial agency as to his means and pecuniary responsibility, is to be presumed to have done so to enable the agency to communicate the same to persons interested for their guidance in giving credit to him, and so long as such intention exists, and the representations reach the persons for whom they were intended, it is immaterial whether they passed through a direct channel or otherwise, provided they were reported by the agency as made by the party.

It is claimed the representations given by Ferry to the agency were in writing, and the plaintiff did not offer the original. The original was copied by the witness, and then it was handed back to Ferry. Plaintiff gave defendant's attorney notice to produce the original, which was not done, and Ferry was in Europe. Under the circumstances we think the testimony offered was proper, and should have been received.

It is not claimed that the note in suit was not lawfully given by the Barge Company; and the record, we think, tends to show that these notes were under T. W. Ferry's

control from the time they were issued until sold, and were sold under his direction and for his benefit, with the assent of the Barge Company; and under such circumstances the company must be bound by Ferry's doings in the matter. Its liabilities are no less than an individual's would be under like circumstances.

It is the duty of this Court in reviewing proceedings in this class of cases to consider the rulings of the circuit judge in excluding testimony which is competent and relevant in support of plaintiff's case where the attachment has been dissolved; otherwise the plaintiff might be deprived entirely of the benefit of his writ, when his evidence was at hand to show the intent to defraud charged against defendant. In nothing that has ever been said by this Court was a contrary ruling intended. Witness Akeley testified that he was acquainted with the Barge Company's property, and that he held a mortgage on the property. Counsel for plaintiff then asked witness the following questions:

" Of $20,000 ?   On what particular barges ?"

" Was there any consideration passing from you to the company for that mortgage ?"

" Have you ever paid the company anything for the mortgage ?"

Each of these questions was objected to and the objection sustained. One of the causes mentioned in the affidavit upon which the writ issued was that defendants had disposed of their property with the intent to defraud their creditors. Certainly the amount for which the mortgage was given, and whether anything had been paid for it, were material facts bearing upon that point; and the plaintiff was entitled to the testimony called for.

Several of the officers of the company were examined by the plaintiff's counsel to ascertain the situation of the property of the Barge Company, the amount of its indebtedness and by whom and when it was held. Answers were given with great apparent reluctance, and it was with much difficulty that any information at all could be obtained upon the points desired. While the secretary and treasurer of the

Barge Company denied, on the application to dissolve the attachment, that it was about to dispose or had disposed of its property with intent to defraud its creditors, he was unable to give the amount of its indebtedness or what disposition had been made of its property.

Further discussion of the case is unnecessary. The errors mentioned relieve us from the consideration of the other points raised by counsel.

The order of the circuit judge dissolving the attachment must be set aside and the application dismissed with costs of both courts.

The other Justices concurred.