Rodman B. Ellison, Henry H. Ellison, William R. Elli-
son and John B. Ellison, trading as John B. Ellison &
Sons, vs. Thomas Stuart and William J. Maxwell, now
or late trading as Thomas Stuart and Company.

*Assumpsit—Evidence—Partnership—Proof of Partnership—Ad-
missions to a Mercantile Agency—Report of Said Agency
—Credit given on faith of Partnership—Credit
of Firm—Estoppel.*

1. In an action where it is sought to hold one as a partner by his own admissions, testimony will be admitted to show that a mercantile agency applied to the defendant to learn whether he was a partner, and what report it obtained. Then it may be shown that such report was delivered to the plaintiff.

2. The plaintiff's belief that defendant was a partner is not admissible as evidence of an actual partnership, but it is competent to show that the plaintiff gave the credit by reason of his belief in, and reliance upon statements made by defendant that he was a partner.

3. The defendant in support of his claim that he was only a creditor of the firm and not a partner, will be allowed to show the notes and other securities given to him by the firm for the loans made.

4. A partnership liability to creditors may arise either where an actual partnership realy exists, or where the party sought to be held as partner is not so in reality, but has held himself out to the world or to the plaintiff creditor as such, or authorized or permitted others to do so, and such creditor has thereby been induced to give, and has given credit to such partnership.

5. The mere loan of money to a partnership, and the taking security therefor, does not make the lender a partner therein. Nor does the lender become a partner by taking profits instead of interest for his loan, if he does not retain control over the money in the partnership business.

6. Where the suit is by a third person, the partnership may be established by evidence that the person sought to be charged has admitted the alleged partnership, or dealt with others as partner, or represented himself to be a partner, or has done other acts from which an actual partnership may reasonably be inferred, but it must appear that the holding out was by the party himself, or by his authority, or with his knowledge or assent. It must also appear that the third party dealing with the firm believed that the party he seeks to hold was a member of the firm, and that the credit was to some material extent induced by this belief.

7. Where it is satisfactorily proven that a mercantile agency, in behalf of one of its subscribers seeking the information, received representations from the party himself inquired about that he was a full partner, and had invested money as such partner in a certain partnership, and that said representations were received from said agency by the subscriber who relied thereon and was induced thereby to give and consequently did give credit to such partnership, the jury will be warranted in finding that said party is liable as having held himself out as a partner to said subscriber.

8. If the jury find that, although not an actual partner, the defendant did so hold himself out as such partner, and thereby did obtain the credit, then the defendant will be estopped from either denying or disproving in his defense that he was a partner.

(<em>June 1, 1899.</em>)

Judges GRUBB and PENNEWILL sitting.

*Francis H. Hoffecker* and *Leonard E. Wales* for plaintiff.

*J. Frank Ball* for defendants.

Superior Court, New Castle County, May Term, 1899.

ACTION OF TRESPASS ON THE CASE (No. 22, September Term, 1898), for the recovery of the balance due on a promissory note and book account indebtedness and interest thereon, amounting in the aggregate to $984.42. The plaintiffs, while claiming that the above amount was due and owing to them from the said alleged co-partners, sought to hold William J. Maxwell liable to them for the said entire indebtedness as a co-partner with the said Stuart.

At the trial, counsel produced George H. Beardsley, who testified that he had met the defendant Maxwell on May 11, 1896, in the office of the Bradstreet Company in Philadelphia, of which he was superintendent (part of the business of said company being to procure information concerning the standing of business men, financial and moral, and to communicate it to subscribers in answer to their inquiries), and in answer to inquiries made of the latter in regard to his connection with Thomas Stuart and Company, that Maxwell then said, " The firm owes only current bills," and he

added "that he was a full partner.  He further went on to say that he personally did not owe a dollar, and, more than that, that he had invested about eight thousand dollars in the business of Thomas Stuart and Company and was worth himself ten shousand dollars or over."  The witness then testified that the substance of the above admissions was embodied in a written report and sent to the plaintiffs.  Counsel for plaintiffs then offered the above mentioned report in evidence, offering to prove that the Bradstreet firm had a written contract with the plaintiffs to furnish such reports.  This was objected to by Mr. Ball, counsel for defendants, on the ground that the contract in writing was the best evidence, and should be produced, and that until produced the report was inadmissible.

GRUBB, J. :—We will not allow you to go into the contents of that contract, but will allow you to show whether, as a matter of fact, this Bradstreet Mercantile Agency did apply to Maxwell for this information, and what report his company got so far as he knows.  Having shown that, we will let you go on, if you can, and show that the report made by the direction of this mercantile agency was delivered to the plaintiffs.

The witness Frank J. Williams, reporter for R. G. Dun and Company, located at Wilmington, testified that he had an interview with the defendant Maxwell about September 17, 1895, in which the latter said he was a member of the defendant firm.  That said firm was composed of himself and Thomas Stuart; that he owned real estate in Wilmington worth eight thousand dollars, unencumbered; real estate in Chester worth two thousand dollars, unencumbered; had upwards of fifteen hundred dollars in cash, and had put eight thousand dollars in cash in the firm of Thomas Stuart and Company, Philadelphia, and claimed to have no debts of any account.  That after giving the above figures he said that that might overestimate him to some extent, but that he considered himself safely worth fifteen thousand dollars.

The witness further testified that the exact statements above

given were embodied by him in a written report which was sent to the Philadelphia office of said mercantile agency for distribution.

Alexander H. Lane, credit man of the plaintiff firm, testified that said reports had been received by the plaintiffs, and that it was upon the strength of the representations contained therein as to William J. Maxwell's being a member of said firm, that he had given credit to the defendants. The said reports were thereupon offered in evidence and admitted over the objection of counsel for defendants. The same witness was then asked by Mr. Wales the following question: "During the entire period from the spring of 1895 to March 1898 the business was transacted and credit furnished to the defendant firm by John B. Ellison & Sons on what basis, on what reliance?"

Objected to by counsel for the defendants as irrelevant, on the authority of *Deputy and Harris vs. Greer, 1 Marvel, 101.*

GRUBB, J. :—In the case cited, it was held that a man's belief that one man was another man's partner was not admissible as evidence of an actual partnership, but that is not the object of the question now propounded. As we understand it, the purpose of the question is to have the witness state whether or not the plaintiffs gave credit during this time upon the alleged statements of Maxwell that he was a partner, etc., as reported to them by this mercantile agency, and not to prove the existence of an actual partnership. The witness can testify that the plaintiffs gave the credit by reason of their belief in and reliance upon those statements. There must be facts to support the belief; that is, representations or admissions, the conduct, etc., of the party sought to be charged as a partner.

The plaintiffs later offered in evidence the original written contract and renewals of the same, as made by them with the Mercantil Agency of R. G. Dun & Company, and said papers were admitted in evidence.

The defendant, Maxwell, denied the admissions claimed to have been made by him as to being a partner in the defendant firm, and stated that he was only a creditor, having loaned Thomas Stuart & Company about four thousand dollars, taking as security therefor Thomas Stuart's judgment notes and also the assignment of a policy of insurance for five thousand dollars on the life of said Stuart. The checks drawn by Maxwell in favor of Stuart for said loans, as well as said judgment notes drawn in favor of Maxwell by Stuart, were offered in evidence. The admission of said papers, as well as of all testimony in the same line, was objected to by counsel for plaintiffs, on the ground that such proof did not tend to negative the existence of the partnership, and was therefore irrelevant. The objection was overruled, and the plaintiffs excepted.

The Court charged the jury upon the various propositions of law raised by the prayers of the respective counsel, as follows:

GRUBB, J., charging the jury:

Gentlemen of the jury:—This is an action brought by the plaintiffs, trading as John B. Ellison & Sons, against Thomas Stuart and William J. Maxwell as co-partners, now or late trading as Thomas Stuart & Company, for the recovery of the balance of a promissory note, and also a book account indebtedness which the plaintiffs claim to be due and owing to them from the said alleged co-partners. In this suit the plaintiffs seek to hold the said William J. Maxwell liable to them for the said entire indebtedness as a co-partner in legal contemplation with the said Thomas Stuart.

It is a well settled principle of law that a partnership liability to creditors may arise either where an actual partnership really exists between the alleged partners themselves, or where the party sought to be held as partner by a creditor is not so in reality, but has held himself out to the world or to the plaintiff creditor, as such, or authorized or permitted others to do so, and such creditor

has thereby been induced to give and consequently has given credit to such partnership.

A partnership between the individual partners themselves has been defined to be "a contract of two or more competent persons to place their money, effects, labor and skill, or some, or all of them, in lawful commerce or business, and to divide the profit and bear the loss in certain proportions."

3 *Kent Com.*, *24.

Where a partnership or other similar relation is once shown to exist it may be presumed to continue where no notice of its dissotion has been given or knowledge thereof received by those who are properly entitled to it.

The act of each partner, in transactions relating to the partnership and within the scope of its particular business, as a general rule, is considered the act of all, and binds all. Each can buy and sell partnership effects, and make contracts in reference to the business of the firm, and pay and receive, and draw and endorse, and accept bills and notes and assign choses in action.

A contract of partnership need not be in writing. Though there be no express articles of co-partnership, the obligation of a partnership engagement may equally be implied in the acts of the parties; and if persons have a mutual interest in the profits and losses of any business carried on by them, or if they hold themselves out to the world as joint traders, they will be held responsible as partners to third persons, whatever may be the real nature of their connection, or of the agreement under which they act. Each individual partner is liable to creditors of the partnership for the whole amount of every debt due therefrom without reference to the proportion of his interest, or to the nature of the stipulation between him and his associates, where the creditor had no notice of such stipulation at the time the indebtedness was incurred. Even if it were the intention of the parties that they should not be partners, and the person to be charged was not to contribute either money or labor, or to receive any part of the profits, yet if he lends

his name as a partner, or suffers his name to continue in the firm after he has ceased to be an actual partner, he is responsible to third persons as a partner, for he may induce third persons to give that credit to the firm which otherwise it would not receive, nor perhaps deserve.

A person may be allowed, in special cases, to receive part of the profits of a business, without becoming a legal or responsible partner, where the whole evidence leads to the conclusion that the receiver of the money took it only as wages, or specific compensation or payment, and did not intend to acquire any interest in or any control over the business, or in the profits as they accrue and before they are ascertained and divided, but only after they were ascertained to find in them the fund and in their amount the measure of his payment.

*Parsons on Partnership, 71; 3 Kent Com., *33.*

The mere loan of money to a partner or partnership and the taking security therefor does not make the lender a partner therein. Nor does a lender become a partner by taking profits instead of interest for his loan, for the lender may take a share of the profits in lieu of interest where he relinquishes the money to the borrower and does not retain control over it in the partnership business.

*Parsons, Principles of Partnership, Sec. 64.*

What constitutes a partnership is a question of law. Whether a partnership in the legal sense exists is a question of fact for the jury to determine. Where the suit is between the parties as partners, stricter proof is required of the existence of the partnership than where the action is by a third person against either actual partners or persons sought to be charged as partners, inasmuch as the latter are more likely to know the means whereby the fact of partnership may be proved than such third person. In such case all those circumstances from which the existence of a partnership or a partnership liability may be fairly and reasonably inferred are properly to be taken into consideration by a jury. Accordingly where suit is brought by a third person the existence of an actual

partnership may be established by satisfactory evidence that the persons (or person) sought to be charged in the action as partners have admitted the alleged partnership, or have dealt with others as a member of the firm, or represented themselves to be partners, or obtained or sought to obtain credit for themselves or the firm as partners, or have jointly participated in the profits of the firm or have done other acts, or conducted themselves in other ways from which an actual partnership may reasonably be inferred. And even where an actual partnership did not in fact exist, yet a partnership liability as to third parties may nevertheless be established by proof that the party sought to be charged in the action as a partner by the plaintiff, although not so in reality, has held himself out to the public generally, or to the plaintiff, as such, or authorized or permitted others to do so, and thereby obtained credit from the plaintiff whom he has thus induced to confide in him as such partner.

Having done so, he is estopped from denying that he is a partner as to those who have in good faith so relied and acted upon his thus holding himself out as such, and he will not be permitted to repudiate the partnership obligation and liability which in legal contemplation he has thereby incurred.

But it must appear that the holding out was by the party sought to be charged, or by his authority, or with his knowledge or assent; and this, where it is not the direct act of the party, may be inferred from circumstances reasonably warranting such inference.

It must also appear that the third party dealing with the firm believed or had a reasonable right to believe that the party he seeks to hold as a partner was a member of the firm, and that the credit was to some material extent induced by this belief.

Where it is satisfactorily proven that a mercantile agency, in behalf of one of its subscribers seeking the information, received representations from the party himself inquired about, that he was a full partner and had invested money as such partner in a certain partnership, and that said representations were received from said agency by the subscriber, who relied thereon and was thereby in-

duced to give, and consequently did give credit to such partnership, the jury will be warranted in finding that said party is liable therefor as having held himself out as a partner to said subscriber.

This principle has been recognized in *Genesee. Sav. Bank vs. Mich. Barge Co., 52 Mich., 164; Eaton C. & B. Co. vs. Avery, 83 N. Y., 31; 17 Am. & Eng. Ency. Law, 1322.*

In the case now before this jury the plaintiffs seek to hold William J. Maxwell the defendant, liable for their entire claim on two grounds: *First,* that he was an actual co-partner with Thomas Stuart, trading as Thomas Stuart and Company. *Second,* that he held himself out to the plaintiffs as such co-partner in said partnership and thereby induced them to give the credit sued for, and therefore is liable to them, although he may not in reality have then been a co-partner in said firm.

If you shall be satisfied from all the evidence before you, that although not an actual partner, he did so hold himself out as such co-partner and thereby did obtain said credit, then the defendant Maxwell will not be permitted either to deny or to disprove in his defense that he was an actual co-partner with Thomas Stuart in said firm, and you should accordingly find a verdict against him for such amount as the plaintiffs have proven on their alleged note and book account claims.

But if you shall not be satisfied that Maxwell so acted and thereby induced the plaintiffs to give the alleged credit, then it will be your duty to determine whether or not he was at the time said credit *was* given an actual partner with Thomas Stuart trading as Thomas Stuart and Company, and render your verdict accordingly.

If you find that he was such an actual co-partner, then your verdict should be for the plaintiffs for the amount of their claim as proved to you; otherwise your verdict should be for the defendant.

·The jury disagreed.

NOTE.—The above stated case was again tried at the February Term, 1900, and resulted in a verdict for the defendant.