## STOCK v. REYNOLDS.

1. ATTACHMENT—DISSOLUTION—LIMITED DENIAL.

Where an attachment is issued upon an affidavit that defendant is about to remove his property from the county, and refuses and neglects to pay or secure payment of his indebtedness to plaintiff, a denial, in a petition for dissolution, that petitioner was about to remove his property with intent to defraud his creditors, or that he was indebted to the plaintiff in any sum, is bad, as too limited to cover the charge. *Bane* v. *Keys*, 115 Mich. 244, followed.

2. SAME—TRIAL OF MERITS—INDEBTEDNESS.

The question of defendant's indebtedness to plaintiff, who procured an attachment upon an affidavit that defendant was about to remove his property from the county, and that he refused and neglected to pay plaintiff's claim, without charging a fraudulent intent, cannot be tried upon a petition for dissolution of the writ.

3. SAME—FINDINGS OF FACT—CONCLUSIONS.

Findings of fact in attachment proceedings that plaintiff, the purchaser of a car of wheat, was repaid the purchase price upon his rejecting the car as below the standard agreed upon, and that defendant, the seller, refused upon demand to send another car, the price of wheat having in the meantime advanced, justify the conclusion that the seller denied liability, and refused to pay any sum upon the claim. GRANT, C. J., and MOORE, J., dissenting.

4. SAME—PROPERTY IN TRANSIT.

2 How. Stat. § 6831, subd. 2, provides for the issuance of an attachment upon an affidavit that defendant "is about to remove any of his property from the county in which such application is made, or from the county where the defendant resides," with fraudulent intent, "or that he has removed or is about to remove himself or his property from the county, and refuses or neglects to pay or to secure the payment of the debt." *Held*, that a car of wheat in the possession of a railroad company, billed from another county and intended to be forwarded to the consignee in another county, is subject to attachment in the county where found. GRANT, C. J., and MOORE, J., dissenting.

5. SAME—PRACTICE—COSTS.

> Where a defendant in attachment proceedings, after appearing specially, and moving to quash the writ on the ground of defective service, and pending the determination of the application, petitions for a dissolution of the writ, which petition is ill-founded, he cannot, after granting of the motion to quash, object that the court had no jurisdiction of the petition to dissolve, so as to escape liability for costs therein.

*Certiorari* to Hillsdale; Chester, J.    Submitted April 18, 1899.    Decided September 27, 1899.

Attachment proceedings by Frederick W. Stock against Isaac N. Reynolds.    Defendant brings *certiorari* to review the action of the circuit court in reversing an order of a commissioner dissolving the writ.    Affirmed.

*John M. Corbin* and *J. B. Hendee*, for appellant.

*Sampson & Barre*, for appellee.

HOOKER, J.    The defendant was, during these proceedings, a grain dealer at Eaton Rapids, in the county of Eaton.    The plaintiff resided in Hillsdale county.    The plaintiff obtained a writ of attachment against the defendant from a justice of the peace in Hillsdale county upon an affidavit alleging that "there is justly due to him from the defendant, upon implied contract, the sum of $150, * * * and that the said Isaac N. Reynolds, as deponent has good reason to believe, is about to remove his property from said county of Hillsdale, and refuses and neglects to pay or secure payment of this debt."    The officer attached a car of wheat, and, being unable to find defendant in the county, left copies of the writ and inventory with the station agent of the Lake Shore & Michigan Southern Railway Company, in whose possession he found the wheat.    On the return day the cause was adjourned to the 13th day of November, the defendant having appeared specially, and moved to quash the writ.    On November 2d the defendant filed a petition with a circuit

court commissioner of Hillsdale county for a dissolution of the attachment, which was heard upon its merits, both parties participating, on November 12th, and the commissioner made an order dissolving the attachment. The case was afterwards heard in the circuit court on appeal from this order, and the same was reversed. The court filed a written finding, and the case is now before us upon *certiorari.*

The finding states that in July, 1897, the defendant sold to the plaintiff two car loads of No. 2 red wheat, of grade equal to wheat previously sold. This was done by correspondence, dated July 28th, 29th, and 30th. One car was shipped July 31st, the other August 2d. The last car shipped was accepted and paid for. The first car arrived at Litchfield on July 31st, but was not inspected until August 11th, and meantime the draft which accompanied the car was paid by the plaintiff. When inspected, it was rejected, as not up to the grade agreed upon, and defendant took back the wheat, and repaid plaintiff for it. Plaintiff demanded that another car be sent, and defendant refused. Meantime the price of wheat advanced. The wheat attached was the property of the defendant, and was shipped the same day that it was levied upon, to a commission house in Detroit, and in course of transit passed through Hillsdale county, and while being held in Jonesville, awaiting the freight train upon the main line of the Lake Shore & Michigan Southern Railway, was taken upon the writ. The return also shows that a motion to quash was granted by the justice during the pendency of the proceedings to dissolve the attachment, whereupon that proceeding was taken by *certiorari* to the circuit court, by which court the judgment of the justice was sustained. Both orders were made by the circuit court upon April 29, 1898, though the finding alluded to was filed earlier.

The question before us relates to the proceedings to dissolve the attachment; and, as the levy fell with the quashing of the writ by the circuit court, we conclude that costs

only are at stake.    The principal questions sought to be raised appear to be:

1. Whether it can be said, under the facts in this case, that the defendant was about to remove his property from the county of Hillsdale, within the meaning of the attachment statute.

2. Did the defendant neglect to pay or secure the debt, within the meaning of the statute?

3. Would this claim, as found to exist by the circuit judge, support an affidavit alleging that an amount was due upon implied contract, the same not being liquidated?

4. Whether the court had jurisdiction to render a judgment for costs in the dissolution proceeding, in view of the fact that the justice acquired no jurisdiction, for the reason that there was no personal, nor a proper substituted, service of the writ.

The petition for dissolution states that the only ground for attachment stated in the affidavit is that "the defendant * * * is about to remove his property from said county of Hillsdale, and refuses and neglects to pay or secure the payment of the debt, *with intent to defraud his creditors* of $150, claimed to be due from the defendant to the plaintiff;" and denies that the petitioner was about to remove his property from said county *with intent to defraud his creditors*, or that he was indebted to the plaintiff in any sum.    As we have already seen, the affidavit for attachment did not contain the charge stated in the petition.    Moreover, the petition does not negative the charge that it does contain, viz., that "the defendant is about to remove his property from said county, and refuses and neglects to pay or secure payment of this debt." The denial is not as broad as this charge, but is limited to a neglect and refusal to pay *with a fraudulent intent*. So far as the point is concerned, the case is equally within the principle of *Bane* v. *Keys*, 115 Mich. 244.

The only other denial contained in the petition is that of indebtedness.    If this were a charge of fraudulent intent, it is possible that evidence in support of this might be admissible, under the decision of *Hyde* v. *Nelson*, 11

Mich. 353. But, as intent is not involved, it seems unimportant. It does not tend to disprove, but rather to confirm, the statement of the affidavit that "defendant refuses and neglects to pay plaintiff's claim." If it be said that it disproves it by showing that there was no debt to refuse payment of, the answer is that this would be addressed to the merits of the action, which cannot be tried in this proceeding. *Genesee Co. Sav. Bank* v. *Michigan Barge Co.*, 52 Mich. 164. See, also, 3 Enc. Pl. & Prac. 79, and cases cited; Drake, Attachm. § 418, and cases cited.

We think the findings justify the conclusion that the defendant denied liability, and refused to pay any sum upon the claim. The circuit judge must have so understood it, or he would have dissolved the attachment. The petition does not allege that the defendant had no property in Hillsdale county, nor that he was not about to remove property from there, nor that he did not refuse or neglect to pay or secure the plaintiff's claim; nor does it state that, while he had property in that county, it was not subject to attachment. Again, it sets up no want of jurisdiction in the justice, and, had it done so, there was another way to dissolve the attachment, viz., by quashing the proceedings; and this was done subsequently. But the petition for dissolution fairly raises the further question, viz., whether the property in transit, under the circumstances mentioned, was subject to seizure upon attachment; in other words, whether such property was, in contemplation of this statute, in Hillsdale county, or about to be removed therefrom. It also contains statements which indicate that the defendant was not indebted upon implied contract; but as to this last we have already said that the nature of the claim cannot be litigated on an application to dissolve the attachment.

"In all such cases [*i. e.*, where the cause of action is not one upon which attachment should issue], though the plaintiff, in his affidavit for obtaining the attachment, allege a cause of action founded on contract, yet if it

should appear, either from the declaration or the evidence, that the true cause of action is not of that character, it is the duty of the court to dismiss the suit." Drake, Attachm. § 10, and note 15.

The former question, however, is one that may be considered. Counsel do not cite us to any adjudication of the question in this or other States. The statute (2 How. Stat. § 6831, subd. 2) provides for the issuance of an attachment against a defendant upon affidavit—

"That he is about to remove any of his property from the county in which such application is made, or from the county where the defendant resides, with the like intent, or that he has removed or is about to remove himself or his property from the county, and refuses or neglects to pay or to secure the payment of the debt."

If we follow the natural meaning of the words of this statute, we shall be obliged to say that this was property within the county of Hillsdale, and that the defendant was about to remove it therefrom. 1 How. Stat. § 2, subd. 1, requires such a construction. Moreover, the first of the section quoted plainly permits attachment of property in counties other than that in which the defendant resides, where removal of any of his property is about to be made with a fraudulent intent. The same subdivision treats a neglect or refusal to pay as equivalent to evidence of a fraudulent intent, where the debtor is about to remove his property. We are of the opinion, therefore, that it was subject to attachment.

It is contended that the disposition of the motion to quash shows that the circuit court had no jurisdiction to render a judgment for costs in this proceeding. This position is untenable. The defendant himself launched this proceeding, instead of relying on his motion to quash. He might have waived the irregular service, had he seen fit, when no such question as this could be raised. But he did not. He pushed the proceedings to dissolve until defeated, and now asks that the court be held to have been so wholly without jurisdiction as not to have authority to impose costs.

We find no error in the record, and the order of the circuit court is affirmed.

MONTGOMERY and LONG, JJ., concurred with HOOKER, J.

GRANT, C. J. (*dissenting*). I cannot conclude that the statute covers a case like the present. The second paragraph of section 6831, 2 How. Stat., authorizes the issuing of an attachment upon an affidavit alleging—

"That he [the debtor] is about to remove any of his property from the county in which such application is made, or from the county where the defendant resides, with the like intent, or that he has removed or is about to remove himself or his property from the county, and refuses or neglects to pay or to secure the payment of the debt."

The defendant was not removing this property *from* the county, but *through* the county, by means of a common carrier, in the usual course of trade. In my judgment, this statute only applies to property of a debtor having some permanent *situs* within the jurisdiction of the courts where the debtor resides or where the creditor resides. Its object evidently was to protect the creditor from danger of loss of the debt by such removal. The debt in this case was contested. It was unliquidated, if there was any debt at all. Plaintiff had made no demand for money damages. He demanded the second car load of wheat after the first one had been taken back because not in compliance with the contract. There was no evidence of fraud or attempt to defraud. There was no danger of any loss of the debt. Plaintiff tried to secure a trial of the cause within his own county by seizing the property in transit, and not in process of removal, within the fair interpretation to be given to the statute. We do not think the case of *Johnson* v. *Lowry*, 47 Ga. 560 (15 Am. Rep. 655), is in point. In that case the defendant was moving from one State to another, and in passing through an intermediate State his property was attached.

The decision seems to be based largely, if not entirely, on the fact that the defendant was not a resident of the State, and upon the ground that "the law gives to every nonresident a *locus* in the county where he is found;" citing the statute of that State.   The clause of the statute there referred to (Code 1868, § 1690), under which, evidently, the decision was rendered, provides:

"Transient persons, whose business or pleasure causes a frequent change of residence, and having no family permanently residing at one place in this State, shall be held and deemed, as to third persons, to be domiciled at such place as they at the time temporarily occupy."

I do not wish to be understood as adopting the rule of that case.   I very much doubt its soundness.

There is, in my judgment, another fatal objection to the plaintiff's right of action.   He had made no claim of a money demand against the defendant.   Nothing had transpired between them to indicate that plaintiff intended to claim damages for the refusal to send the second load of wheat.   A demand that defendant comply with his contract by sending a second load is not a demand for money, or any intimation, even, that money will be demanded. Plaintiff could only maintain this action by showing a refusal or neglect to pay the debt.   Defendant had not refused or neglected.   How can it be said that a man has refused and neglected, when he has neither been asked to pay, nor even advised that money will be demanded?

I think the judgment should be reversed.

MOORE, J., concurred with GRANT, C. J.